JUDGE LINDSAY
delivered the opinion oe the court.
The bill of exceptions shows that it contains all the instructions given. It states that after the testimony was heard “ the court, on motion of the commonwealth’s attorney, instructed the jury as follows, to wit.” Then followed six instructions. If either of the instructions given was omitted, then the statement that the jury was “instructed as follows” is not true. The language preceding the instructions given for the appellant is substantially the same. It is, “The court instructed the jury as follows, on motion of the defendant.” We must indulge the presumption that the statements in the bill of exceptions are true, and therefore that all the instructions given by the court are before us.
The indictment charges that Mickey, in conjunction with *595 Looney and Smith, committed the crime of murder. The theory of the prosecution is that Mickey either participated in the killing of Reardon, or was present and aided and abetted Smith and Looney, or one of them, in the commission of the homicide.
Instruction No. 1, given for the commonwealth, which is based upon the idea that appellant shot and killed Reardon, is unobjectionable.
Instruction No. 2 is in these words: “If the jury believe from the evidence, to the exclusion of a reasonable doubt, that either John Looney or Dan Smith did the killing as charged in the indictment, and that Ben Mickey was present, or near enough to give assistance, and aided or abetted or assisted or incited or advised or encouraged the person doing the killing, they should find'him (Mickey) guilty as charged in the indictment.”
It is to be observed that the guilt of appellant is not made to depend upon whether or not he maliciously aided, assisted, or encouraged the party.or parties who did the killing; nor does the instruction in unmistakable terms convey the idea that to convict Mickey of murder. it was necessary that the commonwealth should show that the party or parties committing the homicide were actuated by malicious motives.
It is true that this conclusion might be deduced by considering the indictment in connection with the instruction, as the jury were told that they must believe beyond a reasonable doubt that Looney or Smith “did the killing as charged in the indictment,” and that Mickey aided, assisted, etc. But if it be improper in civil actions to allow the jury to consider and pass upon the legal effect of the pleadings, as has been frequently held by this court, as in the cases of Tipton v. Triplett (1 Met. 570) and of Allard v. Smith (2 Met. 297), it is certainly of much more doubtful propriety in a criminal prosecution to compel the jury to consider the indictment in *596 order that they may ascertain the meaning of the court’s instructions.
But waiving this point, inasmuch as Mickey may be guilty of murder, and those actually committing the homicide guilty only of manslaughter, the objection to the instruction first stated is fatal.
It may be that. Smith and Looney, or one of them, maliciously shot and killed Reardon, and thereby committed murder, and that Mickey aided, abetted, or assisted in the commission of the offense, and yet it does not necessarily follow that he is also guilty of the same crime.
“If several persons are present at the death of a man, they may be guilty of different degrees of homicide, as one of murder and another of manslaughter; for if there be no malice in the party striking, but malice in an abettor, it will be murder in the latter,'though only manslaughter in the former.” (1 East. P. C., chap. 5, sec. 121, p. 121.) So likewise it may be murder in the party striking the fatal blow and only manslaughter on the part of the abettor. (1 Hale, 446; Russell on Crimes, 510.)
If the assault was made upon Reardon pursuant to an agreement to make such an attack as would naturally tend to endanger his life, those so attacking are each guilty of murder; but if there existed no such agreement on the part of Mickey, and Looney and Smith, or either of them, upon coming to the room of the deceased without consultation or arrangement with the accused, made the attack, he may have suddenly and upon the impulse of the moment given them aid or encouragement without becoming a principal in the murder then and there committed.
He can not be convicted of murder upon the hypothesis that he aided and abetted the parties committing the homicide unless it is made to appear either that he had confederated with them to make the attack or to commit a felony or trespass, or *597 that, being aware of the malice by which they were actuated,. he aided, abetted, or encouraged them in the perpetration of the offense. (1 Hale, 446.)
The instruction under consideration authorized the jury to convict in case they believed that Mickey was present, or near enough to give assistance, and did aid, abet, or encourage his companions, although they may have believed that he acted upon sudden impulse, without actual malice upon his own part, and wholly ignorant of the malicious motives and felonious intentions of his companions. For this error the judgment must be reversed.
Instruction No. 3, while not positively erroneous, is objectionable in view of the fact that it leaves the jury to draw the line of demarkation between direct and circumstantial evidence.
By instruction No. 6 the court defines a reasonable doubt, as follows: “A reasonable doubt is one growing out of the evidence, and not a mere possibility of the defendant’s innocence existing in the juror’s mind.”
By section 236 of the Criminal Code of Practice it is provided, “Where there is a reasonable doubt of the defendant being proven guilty he is entitled to an acquittal.”
It may well- be doubted whether the definition given by the court was not calculated to deprive the appellant of the full benefit of this humane provision. It is true that instructions involving substantially the same definition have been repeatedly considered by this court, and in no' case has a judgment of conviction been reversed on account of its want of accuracy; nor would we reverse in this case for that reason alone. We feel, however, that it is proper to point out the apparent inconsistency between this definition and the section of the Criminal Code quoted.
The reasonable doubt which under the Criminal Code entitles the party being tried to an acquittal does not necessarily *598 grow out of the evidence. The contradictory character of the proof for the prosecution may leave in the minds of the- jury a reasonable doubt as to the prisoner’s guilt; or where the commonwealth’s proof is consistent and apparently conclusive, evidence tending to contradict it produced by the defense may create this reasonable doubt. In such cases it may be said that the doubt arises out of the evidence. Upon the other hand the proof for the prosecution may fail to establish with sufficient certainty some material fact, in which case the doubt does not, strictly speaking, grow out of the evidence, but rather out of the want of evidence. Again, the evidence may be sufficient, if true, to authorize a conviction, and yet the jury may believe that some of the witnesses have sworn falsely, and by reason thereof entertain a reasonable doubt as to the prisoner’s guilt in spite of the evidence.
As it is difficult, if not impossible, to give a precise and intelligible definition of what a reasonable doubt is, without extending an. instruction into almost a treatise upon the subject, it seems to this court that the better practice is to follow as nearly as practicable the language of the Criminal Code, which is certainly as intelligible and as easily comprehended as the definition given in this case.
The judgment is reversed, and the cause remanded for a new trial upon principles consistent with this opinion.