CASE 6.—PROSECUTION AGAINST BUNION TRIPLETT FOR
LARCENY BY STEALING CATTLE.—February 15.

## Triplett v. Commonwealth

Appeal from Pike Circuit Court.

A. J. KIRK, Circuit Judge.

Defendant convicted and appeals.  Reversed.

1. Robbery—Larceny—Intent—Under the statute, in order to con-
stitute either of the offenses of robbery or larceny, it is nec-
essary that the felonious intent should exist.
2. Same—Questions for Jury—Ordinarily, in prosecutions for
larceny, where the facts are in dispute, or the intent doubtful,
the question should be left to the jury under proper instruc-
tions.
3. Same—Where accused took from the possession of the court's
receiver certain cattle belonging to accused and taken from him
under process in an action against him, accused was not guilty
of robbery or larceny, in the absence of evidence of felonious
intent.
4. Same—Application of Statute—Kentucky Statute 1903, sec-
tion 1256, providing that, if any person unlawfully, but not
with felonious intention, take, carry away, etc., any property
not his own, he shall be fined, etc., was not applicable where
accused, in a prosecution for robbery, took from the possession
of the court's receiver, under the belief that he had a right
to do so, certain cattle taken from accused under process in
an action against him.
5. Same—The statutory offense prescribed in Kentucky Statutes
1903, section 1256, imposing a fine on any person unlawfully,
but not wth felonious intention, carrying away property not
his own, is not a degree of the common-law offense of rob-
bery, and an accused in a prosecution for robbery could not
be found guilty of robbery or any degree thereof, such as
larceny.
   Hobson, C. J., and Paynter, J., dissenting.

W. H. MAY and W. S. HARKINS for appellant.

CITATION OF AUTHORITY AND CLASSIFICATION OF QUES-
TIONS DISCUSSED.

1. Robbery, and Grand Larceny; Insufficiency of the Indictment;
The Admission of Incompetent Evidence; The Refusal to Admit
Competent Evidence; Instructions to the Jury; Exclusion of Evi-
dence. (4 Blackstone's Comm., 241; Donnally's Case, 2 East P. C.,
725 (66 S. W., 27); Greenleaf on Evidence, Vol. 3, Sec. 150; 4
Blackstone's Comm., 229; Lord Coke's Definition, Sec. 758, foot
note 2, Bishop's New Criminal Law, Vol. 2; Parke B. definition foot
notes to Sec. 758, Bishop's New Criminal Law, Vol. 2; Common-
wealth v. Davis et al, 66 S. W., 27; Robertson's Kentucky Criminal
Law and Proceedure, Vol. 1, Sec. 412.

2. Writ of Assistance; Attachments; Claims and Delivery. (Civil
Code of Practice, Sec. 180, 181 and 184; Black's Law Dict., p. 1246;
Black's Law Dict., p. 100.)

ADDITIONAL AUTHORITIES CITED.

Wharton's Criminal Law, 8 Ed., section 942; Commonwealth v.
Morse, 14 Mass., 217; Kentucky Statutes, section 409 (1903); 21
Cal., 344; Century Digest, Vol. 42, p. 2695; Thompson v. Common-
wealth, 18 S. W., 1022; Siker v. Commonwealth, 34 S. W., 902;
Banner v. State, 9 Texas, 128; Reed v. Commonwealth, 7 Bush.,
641; Jones v. Commonwealth (Ky.), 57 L. R. A., 432; State v.
Mazyck, 3 Rich., 291.

N. B. HAYS, Attorney General, and CHARLES H. MORRIS for
appellee.

1. Was the offense larceny?

Leslie, the party who had the cattle in his possession, was, to
say the least of it, a bailee. In this case he was not only the
bailee of Bowles, the Court Receiver, who had a special ownership
in the oxen, but by an express agreement was the bailee of the
real owners.

2. The proof on the part of the appellant shows plainly that
he knew that the Receiver Bowles had acquired a special owner-
ship in the cattle. He does not deny that he knew of the orders
and proceedings of the court, which were in full force and effect
at the time of the taking.

3. The fact that he took the gun showed the intent. The
fact that he said to Leslie that he had executed bond shows that

he went there for the purpose of taking the cattle by fraud, and having the gun, he further intended to take them with force, to the extent of shooting some person, if he had been resisted in his designs.

4. The instructions given by the court were proper. They covered every possible phase of the case according to the testimony, and were clear and concise. The instructions offered by the appellant were properly overruled. There was some evidence tending to connect the accused with the commission of the offense, and the case was properly given to the jury to decide.

### AUTHORITIES.

. Criminal Code, section 124; Green v. Commonwealth, 19 R., 750; Criminal Code, section 14-236; Commonwealth v. Prewitt, 82 Ky., 240; Wharton's Criminal Law I., section 936.

OPINION BY JUDGE BARKER—Reversing.

The appellee, Bunion Triplett, was indicted by the grand jury of Pike county, charged with the offense of robbery. To this he pleaded not guilty, but upon trial the jury returned a verdict of guilty of larceny, and fixed his punishment at confinement in the penitentiary for a term of two years. From the judgment based upon this verdict, this appeal is prosecuted.

The facts, in brief, are these: The appellant was the owner of certain cattle (oxen). One Scott instituted an action against him in the Pike Circuit Court, in which process was issued under which the cattle were taken and placed in the hands of the court's receiver, C. C. Boles, who turned them over to S. P. Leslie, to be kept on pasture pending the litigation. While the cattle were thus in the possession of Leslie, the appellant came to his house with a gun on his shoulder, asked for him, and, when he came out, inquired if he had the cattle, and where they were. In response, Leslie said to the appellant that they were in his field, but that, unless he (appellant) was duly

authorized, he had better not take them, as he might get into trouble. To this the appellant replied that he was authorized, and something was said about having executed bond, but this is vague and uncertain, and we are not sure he meant to say that he had executed a replevin bond; but, at any rate, he drove the cattle off down the road and into the State of Virginia, where they were sold. It is not pretended that the appellant used any threats or menaces towards Leslie. On the contrary, the latter says in his testimony that the appellant treated him "very nice," and offered to pay him what was due for pasturing the cattle; that he knew the appellant was a "bad man," and he saw the gun and made no resistance, objection, or remonstrance, except as above stated, to the driving off of the cattle. Assuming the process of the court was regular, and the cattle were rightfully in the possession of Leslie, so far as the pending litigation was concerned, and that appellant was the real owner of the cattle subject to such rights as the court and the plaintiff in the litigation had in them, do these facts show appellant guilty of the crime of robbery, as charged in the indictment, or of larceny, which is included therein?

We have no difficulty in reaching the conclusion that the special bailiff, Leslie, was intimidated by his knowledge that appellant was a "bad man," and the additional fact that he had with him a gun; but it does not follow therefrom that the act of driving off the cattle openly and quietly constituted appellant a felon. Larceny is the unlawful taking and carrying away the goods or property of another, secretly or furtively, with the felonious intent to appropriate them to the use of the trespasser. Robbery is called

Triplett v. Commonwealth.

in the books a compound larceny, and is constituted
by the unlawful and felonious taking and asportation
of the personal property of another by violence, or
by putting him in fear. In order to constitute either
of these offenses, it is necessary that the animus
furandi or felonious intent should exist. In East's
Pleas of the Crown, Vol. 2, p. 655, on the subject of
larceny, and the intent with which the taking must be
done in order to constitute the crime, it is said: "The
felonious intent is essential to the offense; and in
order to make it felony, the intent to steal ought to be
at the time when the party first gets possession of the
goods; such a possession, at least, as is distinct from
that of the owner; for a fraudulent intent, originating
afterwards, to convert the goods to his own use is
not felony; but the original felonious intent may be
collected from subsequent acts." In the same volume,
on the subject of robbery, quoting Wells, J., it is said:
"* * * The following ingredients are necessary
to constitute that offense: (1) A felonious intent,
or animus furandi; (2) some degree of violence or
putting in fear; (3) a taking from the person of
another." In Roscoe's Criminal Evidence, p. 829,
the following principle as to robbery is enunciated:
"The robbery must be animo furandi, with a felonious
intent to appropriate the goods to the offender's own
use. * * * Though the party charged take the
goods with violence and menaces, yet, if it be under a
bona fide claim, it is not robbery. The prisoner had
set wires in which game was caught. The game-
keeper, finding them, was carrying them away when
the prisoner stopped him, and desired him to give
them up. The game keeper refused, upon which the
prisoner, lifting up a large stick, threatened to beat

out the keeper's brains if he did not deliver them.
The keeper fearing violence delivered them.   Upon
an indictment for robbery, Vaughn, B., said: 'I shall
leave it to the jury to say whether the prisoner acted
upon an impression that the wires and pheasant were
his own property, for, however he might be liable to
penalties for having them in his possession, yet, if
the jury think that he took them under a bona fide im-
pression that he was only getting back the possession
of his own property, there was no animus furandi,
and the prosecution must fail.' "

In the case of Searls v. Commonwealth, 7 Ky.
Law Rep., 223, it appeared that a sheriff had levied
upon a raft of logs owned jointly by the execution de-
fendant and two other persons, and notified the joint
owners of the levy, and they would be prosecuted
if they removed the raft.   Notwithstanding this
notice, the execution defendant and one of the other
joint owners removed the logs.   Held: "That there
was no evidence of any felonious intent on the part
of the owners in the taking of the logs, but an as-
sertion of right to the property that they believed
they could exercise without the consent of the sheriff.
Therefore the facts did not authorize their conviction
of the offense of larceny."   In the case of Sikes v.
Commonwealth, 34 S. W., 902; 17 Ky. Law Rep.,
1353, it was held that, where a person retook money,
which he had lost in gambling from the winner, by
presenting a pistol to his head and thus putting him
in fear, it is not robbery, because the alleged tres-
passer was only retaking his own.   The same prin-
ciple was upheld in Thompson v. Commonwealth, 18
S. W. 1022; 13 Ky. Law Rep., 916.   In the case of Utz
v. Commonwealth, 3 Ky. Law Rep., 88, an infant had

exchanged horses with an adult.   Afterwards he went, at night, and took the mare originally belonging to him from the possesion of Willis, the adult with whom he had made the exchange, and carried it across the river.   He made no effort to conceal the fact of his possession, nor did any other act, except that of taking the mare in the night, involving a felonious intent.   It was said in the opinion: "While the entry on the premises of Willis was a trespass, the accused, having regained the mare, had the right to trade her as his own and to repudiate the contract.   Nor does the fact of Willis' knowledge as to his infancy affect the question of guilt or innocence.   If the taking was to repudiate the contract and reclaim that which he had the right to demand, he was not guilty of the alleged larceny."   In the case of Ross v. Commonwealth, 20 S. W. 214; 14 Ky. Law Rep., 259, it appeared that a daughter had given her father a cow upon sufficient consideration.   She afterwards retook the cow and converted it to her own use.   She claimed that the cow was loaned to her father, but the jury found her guilty of larceny.   Judge Pryor, in delivering the opinion of the court reversing the judgment said: "While her conduct with reference to her loan was reprehensible; still there is no case, upon the facts, that would authorize the incarceration of this woman in the State prison for three years, or any period of time, at the instance of a cruel, unrelenting, and inhuman father."   In the case of Kirk v. Commonwealth, 14 S. W. 1089; 12 Ky. Law Rep., 707, a sheriff had levied upon a raft of logs and sold it; it being moored to the bank. The court said: "Moreover, the raft was removed when a tide in the river occurred, openly and without any circumstances inducing suspicion that it was done

with a felonious intent, and all the agency appellant
had was to aid one of his sons, the other being absent, at
his request, in getting it out of the creek, and then
floating it down the river in full view of those near
the river.   It seems to us, there is no evidence in
this case which tends to show, or from which a ration-
al inference can be drawn, that the sons of appellant
stole the raft, or that appellant, with any felonious
intent whatever, aided them in removing it.''   In the
case of Fletcher v. Commonwealth, 118 Ky., 35, 80 S.
W. 1089; 26 Ky. Law Rep., 227, the defendant was
charged with stealing lumber from a church under the
following statute:   ''If any person shall feloniously
take out of or from a church, chapel, or meeting house,
school house, court house, or other public building,
any goods or chattels or other thing of value belong-
ing thereto,    *    *    *    he shall be confined to the pen-
itentiary not less than two nor more than ten years.''
In discussing the facts, the court said:   ''Besides, in
our opinion it is conclusively shown by the testimony
in this case that the appellant did not remove the
planks from the building with a felonious intent.
There was not the slightest attempt at concealment on
his part, and the voluntary restoration by him to the
church of other planks of substantially the same kind
and value is wholly inconsistent with any purpose
on his part to commit a crime.   The inconsiderable
value of the planks removed is also material evidence
in our opinion of a lack of criminal intent.   While the
defendant was perhaps technically guilty of illegally
appropriating personal property, the evidence wholly
fails to make out a criminal intent on his part in so
doing.   We think the trial court erred in overruling
the motion, at the close of the evidence for the com-

monwealth, for a peremptory instruction to the jury
to find him not guilty."·

Clark, in his work on Criminal Law (page 285),
says: "To take one's own property by force is not
robbery, for, as in larceny, the property must be an-
other's; and for a person to take property by force
under a bona fide belief that it belongs to him is not
robbery, for there must be the same felonious intent
as in case of larceny.  Felonious intent is always es-
sential, and an instruction ignoring that element is
ground for reversing a conviction." In Bishop's New
Criminal Law, Vol. 2, section 1162a, sub-section 4, it
is said: "As in simple larceny, so in this compound·
called robbery, a taking under an honest claim of
right, however violent or wrongful, comes short of the
full measure of the offense." And in a note to Jones
v. Commonwealth 57 L. R. A. 443, the rule is thus
stated: "When the property is taken by force,
actual or constructive, under color of right or claim of
ownership, it is not robbery." Citing Barnes v. State,
9 Tex. App. 128; People v. Vice, 21 Cal. 344; State v.
Hollyway, 41 Iowa, 200; 20 Am. Rep., 586.

From the foregoing authority we deduce the rule
that, under the English common law, and con-
sequently under our statute, which is merely declara-
tory thereof, one cannot commit the crime of larceny
or robbery without a felonious intent, or, in other
words, he cannot commit them by inadvertence or
through ignorance.  In the case at bar the cattle be-
longed to the appellant; they had been taken from
him under process of court; while his acts in regard
to them may have been a flagrant contempt of court,
we perceive no evidence of moral turpitude, or per-
haps, to speak with greater exactness, of that felon-

ious intent which constitutes the necessary foundation
for the commission of the crime with which he stood
charged.   Ordinarily, in cases like this, where the
facts are in dispute or the intent doubtful, the ques-
tion should be left to the decision of the jury under
instructions embodying the views herein expressed;
but, in the case at bar, we think the court should have
awarded the defendant a peremptory instruction to
find him not guilty.   We do not mean to hold that one
may not be guilty of robbery or larceny by the wrong-
ful taking of his own property, if he thereby designs
to commit a fraud or entail a loss upon a rightful
bailee or upon another, and what we have decided
does not include the principle involved in those old
cases which hold that, where one takes from his
servant his own property by force or stealth, for the
purpose of charging the hundred with the loss, or
where he takes from a bailee for the purpose of cast-
ing the loss of it upon the latter, or where he has de-
posited his property with another to secure a loan,
and retakes it by force or stealth for the purpose of
depriving the bailee of his property rights therein.
There the moral turpitude is apparent, but the rea-
soning by which this principle is established has no
place in the problem before us.   Here the appellant
retook his own, in broad daylight, without effort at
concealment, and under the manifest belief that he
had a right to do so.

Section 1256 of the Kentucky Statutes of 1903 has
no application to the case at bar.   That section, in so
far as applicable here, is as follows: "If any person
unlawfully, but not with felonious intention, take,
carry away, deface, destroy or injure any property,
real or personal, or other thing of value not his own,

\*   \*   \*   he shall be fined not less than ten nor more than two thousand dollars.'' As the cattle which appellant took, were his own, this taking, although wrongful, is not covered by the language of the statute which makes it an offense, without felonious intent, to carry away the property of another. In addition, this section has no application to the case in hand, because the statutory offense prescribed in the section is not a degree of the common-law offense of robbery, and therefore he could not be found guilty of the statutory offense if the proof failed to show him guilty of robbery, or any degree thereof, such as larceny. Connor v. Commonwealth 13 Bush, 714.

For these reasons the judgment is reversed for proceedings consistent herewith.

HOBSON, C. J., and PAYNTER, J., dissent.