## Mearns v. Commonwealth.

(Decided April 21, 1915.)

### Appeal from Montgomery Circuit Court.

1. Criminal Law—Drunkenness as Defense or in Mitigation of Crime. —Where an act, itself, constitutes the offense, drunkenness is no excuse for its commission, but, where, in order to constitute the offense, the act must be combined with the intent of the accused, then drunkenness may be offered as a defense, or in mitigation of the offense.

2. Larceny—Drunkenness as Defense.—To constitute the crime of larceny, the taking of the property must be with the intent to wrongfully deprive the owner of the possession and use of it, and with the intent to convert it to the use and ownership of the accused, and it is a defense to an accusation of guilt of such crime, that the accused was, too, drunk to be capable of entertaining such intent.

R. A. CHILDS for appellant.

JAMES GARNETT, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, John Mearns, was indicted in the Montgomery Circuit Court, and charged with the crime of grand larceny, alleged to have been committed by stealing more than twenty dollars in money from James Adams. He entered a plea of not guilty to the indictment, and upon a trial he was convicted and sentenced to an indeterminate term of from one to five years in the penitentiary. He filed grounds and moved the court to set aside the verdict and judgment, and to grant him a new trial, which motion was overruled.

The grounds relied upon by him for a reversal of the judgment against him are: That the court misinstructed the jury, and failed to instruct the jury upon the whole law of the case, and that the judgment imposed upon him was without authority of law.

We will make a statement of only such part of the evidence as is necessary in order to determine whether the complaints made by the appellant, that he did not have a fair trial, are justifiably made.

The witness, James Adams, stated on the trial that he and Mearns had been drinking together during a day in Mt. Sterling, but separated late in the afternoon, and that he saw nothing more of Mearns, until he went into his boarding house that night, when he observed Mearns standing near the gate of the yard to the boarding house. Late in the night Mearns came into his room, where he and Ben Senieur were sleeping, and proceeded to occupy a cot in the room; that early the next morning he discovered Mearns going through his pockets, and jumping out of bed, he seized him and accused him of taking his money, when Mearns denied doing so, and requested that he be searched. He did not search Mearns, but went in quest of an officer, and when he returned Mearns was gone. He further stated that he had about $45.00 in money in his pocket just before he retired the night before, and the next morning it was all gone.

Ben Senieur testified that Mearns came into the room very drunk, and went to bed, and that early the next morning he was awakened by an argument between Adams and Mearns, when he directed them to hush and quit making a noise.

On an early train going from Mt. Sterling to Lexington, on the next morning, C. K. Oldham saw Mearns in the possession of about $44.00 in money, which he took out in the presence of Oldham. Mearns testified that

he was very drunk on the day preceding the night upon which it was alleged that he had stolen this money, and was so much intoxicated that he had no knowledge of having been in the room where Adams was sleeping during that night. He accounted for the money that Oldham saw in his possession, by stating that his sister had on the day before given him $31.00 for the purpose of purchasing some clothing, and conveying him to Indianapolis. In this statement he was corroborated by his sister. There were other witnesses in the case who testified to the fact that the appellant was drunk on the day preceding the night upon which he is charged with stealing the money, and, also, upon the following day.

The court gave to the jury two instructions, by one of which the jury was instructed in the usual way, defining the crime of grand larceny, and directing the jury, that if they believed beyond a reasonable doubt that the appellant took, stole, and carried away the money of the witness, Adams, in amount exceeding twenty dollars, against the will and consent of the owner, and with the intention of converting it to his own use and benefit, and depriving the owner of the use and benefit and possession of the money, to find the appellant guilty, without fixing any penalty.

The second instruction given was as follows: ''The law presumes a defendant innocent, until his guilt is proven beyond a reasonable doubt.''

The court declined to give an instruction to the jury to the effect, that although it might believe that the appellant took Adams' money, that, if he was too drunk at the time to have any intent to steal, or to convert to his own use, it should find him not guilty, and of this, the appellant complains.

It is one of the elementary principles of the criminal law, that drunkenness is no excuse for crime. If a man commits a homicide, even if he was unconscious from drunkenness at the time of the nature of his act, he can not be excused on account of intoxication, if his condition was the result of voluntary intoxication with a knowledge of the effect of intoxicating liquors upon his passions. To constitute murder, however, it is necessary that the accused should have, at the time of the homicide, a felonious purpose, or, in other words, that he should commit the deed from malicious motives. This court has held, that if the accused, was by reason of in-

toxication, in such an unconscious state of mind that he did not have capacity to entertain malice, his crime would be reduced to that of voluntary manslaughter. Wherever an act constitutes the offense, drunkenness is no excuse for its commission, but where, in order to constitute the offense, the act must be combined with the intent of the accused, then drunkenness may be offered as a defense, or mitigation of the offense. Keeton v. Com., 92 Ky., 525; Kehoe v. Com., 149 Ky., 400; Terhune v. Com., 144 Ky., 370.

To constitute the crime of larceny, the intent, with which the property was taken must be felonious. In the language of the common law, it must be done *animus furandi*. To take property in the absence of an intention to steal, that is an intention to wrongfully take the property from the possession of the owner, with the intent to convert same to the use of the taker permanently, and to deprive the owner of the use and benefit of it, is not larceny, though under proper conditions it is a trespass. This intention is an essential element in the crime of larceny. 25 Cyc., 45.

The appellant gave testimony upon his trial, that he had no knowledge of the taking of the money from the witness, Adams, at all, and neither had he knowledge of having been in the room where the alleged taking occurred. This want of knowledge upon his part, he stated, arose from his extremely drunken condition at the time. There is abundance of evidence corroborating him as to the fact that he was drunk, and the extent of his drunken condition. While, the facts and circumstances may be such, as would fail to convince the jury of his want of felonious intention, he was entitled to have that phase of his case presented for the determination of the jury, under proper instructions, because it is quite evident, that, if his mind was so beclouded with the effects of drunkenness, at the time, he is alleged to have taken the money, that he did not know, that he had done so, and did not know that he was in the room even, where it is alleged to have occurred, he could not have taken it with the intention which the law requires, in order to constitute larceny. The failure of the court to give an instruction, presenting this defense for him, was prejudicial to his substantial rights.

Roberson, in Section 32, Vol. 1, uses the following language: "Voluntary drunkenness, or the temporary

insanity occasioned by the act of the defendant in getting drunk, constitutes no justification or excuse for the commission of crime, but in a case where the intent or purpose of the party is a necessary element to constitute the offense, such as robbery, larceny, perjury, burglary, or assault with intent to rob, the accused may show that he was too drunk to have any intent at the time he committed the act.'' This doctrine was approved by this court in the case of Williams v. Com., 113 Ky., 652. In that case, wherein the accused was charged with perjury, this court directed the trial court to instruct the jury, that, if at the time the defendant gave the testimony, which was alleged to be false, he was intoxicated from the use of cocaine or whiskey, to such an extent, as to incapacitate him to understand the testimony he gave, or to willingly and knowingly swear falsely, it should acquit him.

The case of Terhune v. Com., *supra,* was, wherein, the accused was charged with robbery. The proof conduced to show that he was extremely drunk at the time of the alleged robbery, and the trial court was asked to instruct the jury, that, although it might believe from the evidence, beyond a reasonable doubt, that the defendant took the property alleged from the complaining witness, yet, if it further believed from the evidence, that the defendant was so drunk that he did not have the intention of robbing the witness, it should find him not guilty. This court, upon appeal, held that such or an equivalent instruction should have been given.

The case of Kehoe v. Com., *supra,* was, wherein the accused was indicted for the crime of willfully and feloniously setting fire to and burning a public prison. Upon an appeal, in that case, this court directed, that upon a retrial of the case, an instruction should be given, based upon the defense of intoxication by the accused.

The first instruction given by the trial court in the case at bar is substantially correct, unless the crime charged in the indictment was committed after the enactment of the present indeterminate sentence law, which is Section 1136, Ky. Statutes, 1915.

The transcript of the evidence fails to disclose, when the offense was committed, but the indictment alleges that it occurred on the 14th day of April, 1914. If such be the fact, as to the date of its occurrence, the first instruction given by the trial court to the jury was preju-

dicial, in that it merely directed the jury to find the appellant guilty, without fixing any penalty, when it was the province of the jury to fix an indeterminate period of imprisonment for the appellant, if it found him guilty, not less than the minimum nor greater than the maximum period, prescribed as a penalty for the crime of grand larceny.

The second instruction given by the trial court was, also, faulty, in that it did not direct the jury to find the appellant not guilty, if it entertained a reasonable doubt as to his having been proven to be guilty, as charged in the indictment. The court should have given an instruction in place of the second instruction given, substantially as provided for in Section 238 of the Criminal Code.

For the reasons indicated, the judgment of conviction is reversed, and this case is remanded to the court below, with directions to set aside the judgment, and to grant appellant a new trial, and for proceedings in conformity to this opinion.