## Ford v. Commonwealth.

(Decided April 18, 1917.)

## Appeal from Warren Circuit Court.

1. **Larceny—Horse Stealing—Evidence—Sufficiency.**—In a prosecution for horse stealing, evidence considered and held sufficient to sustain a conviction.

2. **Larceny—Horse Stealing—Instructions.**—Where the evidence is conflicting and there is consequent doubt as to whether the defendant is guilty of horse stealing or of trespass, an instruction telling the jury to find the defendant guilty as charged, if they believe from the evidence beyond a reasonable doubt that the defendant, by himself or with another, did unlawfully, wilfully and feloniously steal, take and carry away from one Mrs. Fannie Thomas one horse, the property of Mrs. Thomas, without the knowledge or consent of the owner, and did convert same to his own use, is erroneous in not making clear to the jury that the taking must have been with the felonious intent on the part of the defendant then and there to convert the horse to his own use and to permanently deprive the owner of her property therein.

3. **Indictment and Information—Conviction of Offense Included in Charge.**—Under section 264 of the Criminal Code, providing that if an offense be charged in an indictment to have been committed with particular circumstances as to time, place, person, property, value, motive or intention, the offense without the circumstances, or with part only, is included, the court, on a trial for horse stealing, where there is evidence that the taking was without felonious intent, may authorize a conviction under section 1256 of the Kentucky Statutes, punishing any person who unlawfully, but not with felonious intention, carries away the property of another.

4. **Criminal Law—Horse Stealing—Trespass—Instruction.**—On an indictment for horse stealing, proper instructions covering that offense and the offense of trespass directed to be given.

W. P. DRAKE and N. P. SIMS for appellant.

M. M. LOGAN, Attorney General, and O. S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Defendants, Frank Ford and Washington King, were jointly indicted for the crime of horse stealing. On a separate trial, Ford was found guilty and his punishment fixed at eight years' confinement in the penitentiary. He appeals.

The facts are as follows: Ford, who is a negro and a resident of New Jersey, is a chauffeur by trade. During the latter part of the summer of 1916 he came to Bowling Green from Memphis and, being out of employment, entered the service of Mrs. Fannie Thomas as a farm hand. Mrs. Thomas and her two sons, Shelby and Clint, lived in the country about five or six miles from Bowling Green. On the night the horse was taken they had a visitor by the name of C. C. Waters, who came to the Thomas home in a buggy. Leaving his buggy at the Thomas home he went away with Clint Thomas in the latter's buggy. Ford had spent the day in Bowling Green and returned that evening with King. Ford was in the habit of having his washing done by a negro woman by the name of Jennie Kincheloe, who lived some distance from the Thomas farm. According to the evidence of Shelby Thomas, Ford performed his evening work and then stated to Thomas that he was going to take his washing to Jennie Kincheloe, but said nothing about using a horse for that purpose. Thereafter Ford hitched a horse to Waters' buggy and Thomas heard him drive out the front gate right after supper. Thinking that Ford was slipping a horse out for the purpose of driving it, Thomas immediately hitched up a rig and, together with his mother, proceeded to follow Ford and King, who went in the direction of Jennie Kincheloe's home. When discovered by Thomas they were at the intersection of two roads, a mile and a half or two miles from his home, and about a mile or a mile and a half from Jennie Kincheloe's house. The buggy was then standing still and the horse was facing the Thomas farm. Thomas drove up from the opposite direction and locked wheels with Ford and asked him what he meant. Ford replied that he was taking his washing to his washer-woman. Thomas then asked him who gave him permission to use the horse, and he replied "nobody." Thomas then directed Ford to take the horse home, and Ford drove in front while Thomas followed behind. On their way home Ford stopped at Jennie Kincheloe's cabin and left a bundle of clothes. Thomas had no idea at the time he met Ford that Ford intended to steal the horse, but thought that he had only slipped the horse out to drive. After reaching home he found in the buggy driven by Ford two chickens in a sack, almost smothered, Ford's clothes, a pair of shoes,

a towel and soap. Thomas then informed his brother, Clint Thomas, what had happened, and the latter went to Bowling Green and had Ford and King arrested. Clint Thomas testified that on the occasion in question he went to Bowling Green and notified policemen Pulley and McAuliffe. They saw King and Ford on Main Street in Bowling Green, between the freight and passenger depots. He caught Ford, while one of the officers caught King as he attempted to run into the street. On the Friday before Ford took the horse, Ford had failed to stop a team of mules and a wagon loaded with corn which was being hauled into the stable, and the wagon came in contact with, and badly injured, a runabout. Thomas told Ford that if he ever let another team get past him he would knock his block off. Because of this accident his feelings towards Ford were not kind. Both of the Thomases say that on two or three prior occasions they had allowed Ford to take a horse and go to Jennie Kincheloe's for his washing. It further appears that on the night of the arrest there was a negro excursion due to pass through Bowling Green about midnight, when the station was crowded with negroes. Jennie Kincheloe testified that she had washed Ford's clothes on two other occasions before the Sunday night in question. The first time Ford came to her house he was driving a horse and buggy belonging to the Thomas farm. On another occasion when he came to her house he was riding a horse owned by the Thomases. The cross-roads where Shelby Thomas said that he found Ford were located about a half or three-quarters of a mile from her home. In front of her home was a deep gully. Because of this gully it was difficult to turn a horse and buggy around in front of her house. Beyond her house the road was level, and people would frequently drive to this level place for the purpose of turning their vehicles around. She further testified that after Ford had left on the Sunday night in question she examined the bundle of clothing and found it to be the same clothing that she had washed for Ford the previous week and delivered to him the Saturday night before. The clothing had not been used or soiled in any manner.

Ford and King testified that Jennie Kincheloe lived only about a half mile from the Thomas farm and that they were only about a hundred or two hundred yards beyond her house when Mr. Thomas met them. They

were not standing still, but were driving back home in a walk. The reason they drove by Jennie Kincheloe's house was that there was a deep gully in front of her house and it was dangerous to turn around there at night. For this reason they went further down the road in order to turn in safety. They both say that they had already delivered Ford's washing at Jennie Kincheloe's house when Shelby Thomas met them, and that neither of them had any intention of stealing the horse. Ford says he did not think Mr. Thomas had any objection to his using the horse, since on several occasions he had let him have a horse to go to Jennie Kincheloe's.

The first ground urged for a reversal is that the verdict is not sustained by the evidence. In this connection it is argued that the facts, viewed in their worst aspect, simply make out a case of trespass, and are not sufficient to show that Ford took the horse with the felonious intention of permanently depriving the owner of his property therein. In support of this argument much stress is placed on the permission theretofore given Ford by the Thomases to use one of their horses for the purpose of taking his laundry to Jennie Kincheloe's; that he used the horse for this purpose on the occasion in question; and that when found he was not going away from the Thomas home, but was either standing still with the horse facing in that direction, or was actually on his way there. It is further insisted that, even if the chickens were stolen, the fact that the horse was used to convey them away does not show an intent to steal the horse too. In considering the question of felonious intent, it must be remembered that while Ford had, on previous occasions, asked permission from the Thomases to use one of their horses, he did not ask permission on the occasion in question. Furthermore, there was no reason whatever for him to use the horse for the purpose of taking his laundry to Jennie Kincheloe's on the night in question. The very clothes which he took had been washed, paid for and delivered to him the night before. Being unsoiled, there was no necessity of their being washed again. When this circumstance is considered in connection with the presence in the buggy of the chickens, the suit of clothes, the towel and soap and bundle of clean clothes, together with the further evidence that Ford and his companion had proceeded a considerable distance beyond the Kincheloe home and

much further than the gully required them to go in order to turn around in safety, it was for the jury to say whether or not they had prepared for a journey, and to that end had taken the horse with the felonious intent of converting it to their own use and of permanently depriving the owner of his property therein.

Besides other instructions not necessary to refer to, the court instructed the jury as follows:

"1. If the jury believe from the evidence beyond a reasonable doubt that in Warren county, Kentucky, and before the finding of the indictment herein, the defendant, Frank Ford, by himself or with another, did unlawfully, wilfully and feloniously, steal, take and carry away from one Mrs. Fannie Thomas, one horse, the property of Mrs. Thomas, without the knowledge or consent of the owner, and did convert same to his own use, they will find defendant guilty as charged, and fix his punishment at confinement in the penitentiary not less than two nor more than ten years.

"2. Although the jury may believe from the evidence that defendant has not been proven guilty as charged, of stealing the horse, yet if they shall believe from the evidence beyond a reasonable doubt that at the time and place named above the defendant, Ford, by himself or with another did unlawfully, without felonious intent, take the horse in question from the said Mrs. Thomas' stable, without the knowledge or consent of the owner so to do, they will find him not guilty as charged, but guilty of taking without felonious intent, and fix his punishment at a fine of not less than $10.00 nor more than $2,000.00; and if the jury find him guilty under this instruction, they may or not provide that unless the fine be paid or replevied, he shall be placed at hard labor."

To constitute the crime of larceny, the intent with which the property was taken must be felonious. In the language of the common law, it must be done *animo furandi*. To take property in the absence of an intention to steal, that is, an intention to convert the same to the use of the taker and permanently to deprive the owner thereof, is not larceny, though under proper conditions it may constitute a trespass. Mearns v. Commonwealth, 164 Ky. 213, 175 S. W. 355; Triplett v. Commonwealth, 122 Ky. 35, 91 S. W. 281; Smith v. Commonwealth, 129 Ky. 433, 112 S. W. 614; Walklate v. Com-

monwealth, 118 S. W. 314; Allen v. Commonwealth, 144 Ky. 222, 137 S. W. 1060; Alexander v. Commonwealth, 14 R. 290, 20 S. W. 254; Harris v. Commonwealth, 163 Ky. 781, 174 S. W. 476. It will be observed that instruction No. 1 merely submits to the jury the question whether the defendant, Ford, by himself or with another did unlawfully, wilfully and feloniously steal, take and carry away from one Mrs. Fannie Thomas, one horse, the property of Mrs. Thomas, without the knowledge or consent of the owner, and did convert the same to his own use. In other words, it leaves to the jury to determine whether the taking was felonious without calling their attention to the elements necessary to constitute such a taking. Not having done this, the jury may have concluded that the mere taking and use of the horse, without the owner's consent, constituted larceny, even though defendant had no intention of permanently depriving the owner of the property. Of course, cases may arise where an instruction in the language of the given instruction would not be prejudicial, but we are not inclined to adopt this view under the particular facts of this case. Here the defendant, while admitting the taking without the owner's consent, disclaimed any purpose permanently to deprive the owner of the horse and claimed that he took the horse for mere temporary use and with the intention of returning it to the owner. Thus the question sharply presented to the jury was whether the defendant was guilty of larceny or of trespass, and in view of the conflicting evidence on this point and the consequent doubt as to defendant's guilt of horse stealing, we conclude that the failure of the trial court to make clear in its instructions the distinction between larceny and trespass is ground for reversal.

In view of another trial, we deem it necessary to determine whether, under an indictment for horse stealing, the defendant may be convicted of unlawful taking without felonious intent under section 1256 of the Kentucky Statutes. In this connection our attention has been called to the case of Triplett v. Commonwealth, 122 Ky. 35, 91 S. W. 281, where the court, after referring to the above section of the statutes, concluded the opinion with the following language:

"In addition, this section has no application to the case in hand, because the statutory offense prescribed in

the section is not a degree of the common law offense of robbery, and, therefore, he (the defendant) could not be found guilty of the statutory offense if the proof failed to show him guilty of robbery, or' any degree thereof, such as larceny.''

In reaching this conclusion, the court appears to have overlooked section 264 of the Criminal Code, which is as follows:

''If an offense be charged in the indictment to have been committed with particular circumstances as to time, person, property, value, motive or intention, the offense without the circumstances, or with part only, is included in the offense, although that charge may be a felony, and the offense, without the circumstances, a misdemeanor only.''

In construing this section, it has been held that one indicted under section 807 of the Kentucky Statutes for maliciously disturbing any fixture attached to a railroad track, may, in the absence of evidence that he was actuated by malice in taking away a switch light, be convicted of unlawful taking without felonious intent under section 1256 of the Kentucky Statutes. Commonwealth v. Wells, 112 S. W. 568. And in the case of Price v. Commonwealth, 129 Ky. 716, 112 S. W. 855, it was held that, under an indictment under section 1163 of the Kentucky Statutes, for forcibly breaking and entering a railroad car with intent to steal, it was proper to instruct the jury on trespass as defined in section 1256 of the Kentucky Statutes, where the evidence showed that the accused cut the seal on the car door, slid it back a little, then pushed the door back in place, and walked away. Whether one who unlawfully takes the property of another without his consent is guilty of larceny or of trespass under section 1256, *supra,* depends on whether the taking was with or without a felonious intent. If with a felonious intent, the offense is larceny; if without a felonious intent, the offense is trespass. Since, under section 264, *supra,* an offense charged to have been committed with particular circumstances as to time, place, person, property, value, motive or intention, necessarily includes an offense without the circumstances, or with part only, there can be no doubt that the section aptly fits the facts of this case and authorizes an instruction on trespass. The case of Triplett v. Commonwealth, *supra,* to the extent

that it announces a contrary doctrine, is hereby overruled.

On another trial the court, in lieu of instructions 1 and 2, will instruct the jury as follows:

"1. If you believe from the evidence beyond a reasonable doubt that in Warren county, Kentucky, and before the finding of the indictment herein, the defendant, Frank Ford, by himself or with another, did unlawfully, take and carry away one horse, the personal property of Mrs. Fannie Thomas, with the felonious intent then and there to convert the same to his own use and to permanently deprive the said Mrs. Fannie Thomas of her property therein, without the consent of the said Mrs. Fannie Thomas, you will find the defendant guilty of horse stealing and fix his punishment at confinement in the penitentiary for not less than two nor more than ten years."

"2. Although you may believe from the evidence that defendant has not been proven guilty of horse stealing under instruction No. 1, yet, if you believe from the evidence beyond a reasonable doubt that at the time and place named above, the defendant, Ford, by himself or with another, did unlawfully take the horse in question from the stable of Mrs. Fannie Thomas, without her consent, but without the felonious intent then and there to convert the same to his own use and to permanently deprive the said Mrs. Thomas of her property therein, you will find him not guilty of horse stealing as charged, but guilty of taking without felonious intent, and fix his punishment at a fine of not less than $10.00 nor more than $2,000.00; and if you find him guilty under this instruction, you may or not provide that unless the fine be paid or replevied, he shall be placed at hard labor."

The other instructions given by the court are not subject to criticism.

Judgment reversed and cause remanded for a new trial consistent with this opinion.