## Fleming v. Commonwealth.

(Decided November 30, 1926.)

### Appeal from Hopkins Circuit Court.

1. Criminal Law—Testimony of Accomplice to Rape Held Sufficiently Corroborated to Take Case to Jury (Criminal Code of Practice, Section 241).—In prosecution for rape, corroboration of accomplice's testimony held sufficient, under Criminal Code of Practice, section 241, to take the case to the jury.

2. Criminal Law—Refusal of Continuance is Not Reviewable, in Absence of Motion Therefor.—Defendant who made no motion for

continuance held not entitled to complain, on appeal, of failure of court to continue case.

3. Criminal Law—Defendant Could Not Complain of Inflamed Public Sentiment, in Absence of Motion for Change of Venue.—That militia was guarding courthouse and public sentiment was inflamed against defendant held not ground for complaint, in absence of motion for change of venue.

4. Indictment and Information—Indictment Charging Each Defendant with Offense, and that Each Aided the Other, Does Not Charge Two Offenses.—Charge that each defendant committed rape, and was present aiding and assisting other defendants in same offense, does not charge two offenses.

5. Criminal Law—One Aiding Another in Offense is a "Principal."—A person present, aiding and assisting another in commission of an offense is a "principal."

6. Criminal Law—Statutory Definition of Reasonable Doubt Held Proper.—Instruction on reasonable doubt in language of statute held proper.

ROSCOE CONKLING for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

An indictment was returned in the Hopkins circuit court against Bunyan Fleming, Columbus Hollis and Nathan Bard, charging them with the crime of rape. Fleming was placed on trial, he was found guilty and his punishment was fixed at death. He appeals.

A young lady sixteen years old was visiting in Madisonville. About eight o'clock in the evening she got in a car with a young man to go to an entertainment. The young man wished to show her the town and so after driving around a little he stopped the car in front of the country club to show her the building. The house was dark; there was no one there. While they were sitting in front of the building two negroes appeared at the car armed with pistols and one had a flashlight. One of them pulled the young man out of the car and at the point of a pistol searched him, taking his money, his watch and everything that he could find in his pockets. While this was going on the other negro took the young lady out of the car by force and took her down to the caddy house, where he raped her while the third negro in the party held her head and then the other negro raped her, who

had in the meantime been holding the young man up with a pistol pointed at him.

Columbus Hollis was a witness for the Commonwealth. He testified, in substance, that Bunyan Fleming's wife was a cousin of his wife and that they were at his house that day; that he owned an Essex automobile, new model; that in the afternoon he and Fleming got in the car at Carbondale, where he resided, and went to Earlington, returning to Carbondale about seven o'clock, and after eating their supper they went in the car to Madisonville at the request of Fleming. On the way to Madisonville they picked up Nathan Bard, who also got in the car with them. They then went on until they got near the Country Club, where Fleming said he wanted to see a man, and they drove the car around to the rear of the Country Club and stopped. Fleming and Bard got out and he remained in the car. While he was sitting there he heard a woman scream at the front of the building. He went around there; when he got there Bard was holding up the young man with a pistol and Fleming was attempting to rape the girl. Fleming drew his pistol on him and made him hold her head, then Fleming took Bard's place by the young man and Bard raped the girl. They all immediately afterwards got in the car and returned through Earlington to Carbondale. They were running slowly until they passed the railroad at Earlington. There Fleming stepped on the gas and they ran rapidly to Carbondale, reaching there about 10:30. Hollis' testimony as to his leaving home with Fleming in the car and returning home, as stated by him, is confirmed by the testimony of Hollis' wife and his son, who were at his house. On the other hand, Fleming testified that after eating supper at Hollis' house that night they did not leave there at all, but stayed there playing dominos until bedtime and then went to bed, and that he knew nothing of the occurrence.

Section 241 of the Criminal Code provides:

"A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

The chief question raised on the appeal is that there was not here other evidence tending to connect the defendant with the commission of the offense. Neither the young man nor the young lady identified Fleming, but he stated the occurrence happened between 8:15 and 8:30 p. m. Smith Davis testified on direct examination as follows:

"I know Bunyan Fleming. I saw him on the afternoon of April 7, with Columbus Hollis coming towards Earlington. When I saw them in the car coming towards Earlington I passed them on the railroad. They had a spare tire on the car and it had a Firestone advertisement cover on it. This was about dark. I got to Madisonville about 8:15. On my way from Earlington to Madisonville I saw an Essex car parked on top of the hill at the corner of the Country Club grounds. Ila Page was with me."

On cross-examination he testified:

"I am pretty sure I would recognize this car. I have seen it enough that I really thought it was Hollis' car. I wouldn't say positively. It was a new model Essex coach. I am an Essex agent. It could have been somebody's else car."

Ila Page was with Smith Davis and testified to seeing the Essex car parked at the place described by Davis, which was the place where Hollis testified he parked the car. He also testified that on the afternoon of April 7, he saw Bunyon Fleming at Earlington driving in the car with a negro he did not know. It was an Essex coach.

Elmer Todd was the night patrolman at Earlington. On the night of April 7 he saw two negroes pass through Earlington in their car about ten o'clock and go toward Carbondale. They were driving at a reasonable gait until they started over the railroad and there they increased their gait. He also said that he saw the men in the car, but he couldn't say that he recognized them. He recognized the car. That was the only car that bore that license number. He recognized the license number of the car because Columbus Hollis had been driving the car in there. When asked to give the license number he said he didn't remember it. He said the men in the car were

negroes and no other negro in that section owned an Essex coach except Columbus Hollis, so far as he knew.

Dick Graham went out to the Country Club the next morning and examined the scene of the rape. In the little grass plot nearby he found a man's tracks. The tracks showed that the heel was lower at one side, right next to the walk. When Bunyon Fleming was arrested a day or two later he examined the shoe that he had on. The track and the shoe were similar. The heel part of it showed that on the lower side the impression was deeper than any other part of his shoe and it had eight tack prints in it. The shoe showed eight tacks. He did not try the shoe in the track, did not measure the track.

Roy Wilson went to the grounds early the next morning. He found the tracks there in the grass plot; three tracks, two from the right foot and one from the left. The left shoe wasn't so distinct as the right. It was a short shoe, and this side of the heel appeared to be higher than the other side of the heel. Right back of the building, and at the point where Hollis testified he had parked his car, the witness found signs that an automobile had been parked there. There was no driveway around that way.

The testimony also showed that soon after the occurrence the premises had been watched and everybody had been kept off the grounds until they were examined by these witnesses in the morning.

There was no doubt that the offense was committed by three negro men. Two of them were Columbus Hollis and Nathan Bard, for the young man identified Bard as the man who held him up. The circumstances connecting Bunyan Fleming with the commission of the offense are that he left Carbondale in the car with Hollis. He returned to Carbondale in the car with Hollis after the offense was committed, and a flashlight was found under the cushion of the car. The car was parked back of the country club and was seen there about the time of the offense. The man's tracks found in the grass plot were about the size of Fleming's shoe, although it was not measured; there was a high place in the ground corresponding with the low place in the heel of one shoe and there were eight tacks in the shoe and the impression of eight tacks in the ground. Fleming's effort to show that he was elsewhere utterly failed. The proof as to the car being seen back of the country club and as they returned

through Earlington, the proof that Fleming was in the car with Hollis when he left Carbondale and when he returned, and the proof that the impression in the ground, including the low place at the heel and the tacks in the shoe, corresponded with his shoe, was sufficient corroboration of the testimony of the accomplice to take the case to the jury. Commonwealth v. McGarvey, 158 Ky. 570.

It is insisted that the court erred in not continuing the case. The record shows that when the indictment was returned the attorney for the defendant stated that he had been employed to defend Bunyan Fleming but that he had no opportunity to see him or prepare his defense. He filed his affidavit showing these facts and moved the court for a continuance. The motion was sustained. The Commonwealth then moved the court to set the prosecution for trial on the following Monday, to which the defendant objected and requested the court to set the prosecution down for trial on Tuesday, and this was done, as requested by the defendant. When the case was called on Tuesday the defendant filed a demurrer to the indictment, and his demurrer being overruled he excepted. Thereupon both parties announced ready for trial. The defendant can not complain first in this court that the case was not continued. The case was set over until Tuesday on his motion and when called on that day there was no motion for a further continuance.

It is also insisted that there was a company of militia guarding the courthouse and that public sentiment was so inflamed that it was impossible for the defendant to have a fair trial. But there was no motion for a change of venue, and this objection can not be made for the first time in this court.

It is also insisted that the court erred in overruling the demurrer to the indictment. The indictment charged each of the defendants with the commission of the crime and also charged that each of them was present aiding and assisting the other in the offense. This was not a charge of two offenses. To commit an offense in person or to be present aiding and assisting another in committing the offense are but different modes of committing the offense. In Benge v. Commonwealth, 92 Ky. 1, it was so held. That case has been followed in many subsequent cases and is the settled rule of the court. It rests upon the ground that in such a case only one offense is charged, and that the indictment is a charge of that

offense as committed in two ways. The person who is present aiding and assisting another in the commission of an offense is a principal in that offense.

On the whole case there was no substantial error to the prejudice of the defendant.

The instruction on reasonable doubt followed the language of the Code. It is well settled that this is proper. Mickey v. Com., 9 Bush 593; Mearns v. Com., 164 Ky. 213.

Judgment affirmed.